No. 25-1469

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GENEVA ENTERPRISES, LLC; AV AUTOMOTIVE, LLC,

*Plaintiffs-Appellees,*

v.

AARON CHAVEZ; ALEX GUEVARA; ANA FLORES;
ANTHONY CIPRIANO; ANTONIO RIVERA; BRUCE WILSON;
CARLOS ROMERO; CHELSEA MONTES; CHRISTIAN
ISOPESCU; DOGAN GUNESSEVER; EDWARD MARTIN;
ERODITA GUEVARA; EUN SHIN; HECTOR OROZCO; HUGO
CAJINA; JAMES OSBORN; JEFFREY SHADE; KAI REED;
MICHAEL KENTES; MICHAEL HOOK; PATRICK WHITE;
PAUL LYONS; ROBERT DORMAN; ROBERTO HUACCHA;
ROY BRAXTON; ROY HIPPERT, JR.; SEAN MCLAIN;
THOMAS GRANT; TOMMY TRAN; WILLIAM SMITH;
WILLIAM BONILLA,

*Defendants-Appellants.*

On Appeal from the United States District Court for the
Eastern District of Virginia at Alexandria
Case No. 1:24-cv-00704-CMH-WBP

## DEFENDANTS-APPELLANTS' OPENING BRIEF

Robert W.T. Tucci
Thomas J. Eiler
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
301-587-9373
rtucci@zagfirm.com
teiler@zagfirm.com

*Counsel for Defendants-Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1469          Caption: Geneva Enterprises, LLC et al. v. Aaron Chavez et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Aaron Chavez et al. (all Appellants)

(name of party/amicus)

who is _____Appellants_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.   Does party/amicus have any parent corporations? ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
     If yes, identify all such owners:

12/01/2019 SCC                                    - 1 -

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Robert W.T. Tucci           Date: September 10, 2025

Counsel for: Appellants

- 2 -

Print to PDF for Filing

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................ ii

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF ISSUES ...............................................................................2

STATEMENT OF THE CASE...........................................................................2

SUMMARY OF ARGUMENT .......................................................................10

STANDARD OF REVIEW .............................................................................13

ARGUMENT ..................................................................................................13

    I.     THE DISTRICT COURT ERRED IN DECLINING TO LIFT
          THE STAY AND ENFORCE THE ARBITRATION
          AGREEMENTS AFTER GENEVA PREVENTED
          ARBITRATION FROM PROCEEDING. ...............................................13

          A.    Geneva Materially Breached the Arbitration Agreement by
               Refusing to Pay the AAA Fees, Which is a "Refusal to
               Arbitrate" Under the FAA. ..............................................................14

          B.    The District Court's Indefinite Stay Despite Geneva's
               Default Contravenes FAA §§ 3 and 4 and Deprives
               Defendants of Any Forum for Relief..................................................17

          C.    Geneva's Arguments Against Compelling Arbitration are
               Legally and Factually Baseless..........................................................20

CONCLUSION ...............................................................................................25

STATEMENT REGARDING ORAL ARGUMENT ...........................................25

CERTIFICATE OF COMPLIANCE.................................................................27

i

# TABLE OF AUTHORITIES

## Cases

*Adkins v. Labor Ready, Inc.,*
303 F.3d 496 (4th Cir. 2002)................................................................8

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) ........................................................................10

*Chorley Enters. v. Dickey's Barbecue Rests., Inc.,*
807 F.3d 553 (4th Cir. 2015) ...........................................................13

*Columbia State Bank v. O'Meara,*
2012 U.S. Dist. LEXIS 113671 (D. Or. June 11, 2012)....................21

*Garcia v. Mason Contract Prods., LLC,*
2010 U.S. Dist. LEXIS 92869 (S.D. Fla. Aug. 18, 2010)..................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ...........................................................................13

*Pre-Paid Legal Services, Inc. v. Cahill,,*
786 F.3d 1287 (10th Cir. 2015)....................................................15, 18

*Sink v. Aden Enterprises, Inc.,*
352 F.3d 1197 (9th Cir. 2003)......................................................14, 15

## Statutes

28 U.S.C. § 1331 ..........................................................................................1
28 U.S.C. § 1441 ..........................................................................................4
28 U.S.C. § 1446 ..........................................................................................4
9 U.S.C. § 1 ..................................................................................................1
9 U.S.C. § 2 ................................................................................................10
9 U.S.C. § 3 ...................................................................................... passim
9 U.S.C. § 4 ...................................................................................... passim
9 U.S.C. § 16(a)(1)(B) .................................................................................1
Va. Code § 8.01-581.02 ...............................................................................4
Va. Code § 8.01-628 .....................................................................................4

## Rules

ii

Fed. R. Civ. P. 81 ..................................................................................................4

## JURISDICTIONAL STATEMENT

This appeal is taken from an interlocutory order denying a motion to compel arbitration. On March 27, 2025, the United States District Court for the Eastern District of Virginia (the "District Court") issued an order denying Defendants-Appellants' ("Defendants")[1] Motion to Lift Stay and Renewed Motion to Compel Arbitration (Defendants' "Renewed Motion to Compel Arbitration"). JA1411.

The United States District Court for the Eastern District of Virginia had subject-matter jurisdiction over this action pursuant to both 28 U.S.C. § 1331, because the case arises under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*; and the FAA, 9 U.S.C. § 4, because Defendants moved the District Court to compel arbitration of their claims against Plaintiffs-Appellees (Plaintiffs-Appellees are hereinafter collectively referred to as "Geneva").

This Court has appellate jurisdiction under the FAA, 9 U.S.C. § 16(a)(1)(B) because the District Court's March 27, 2025 order denied Defendants' Renewed Motion to Compel Arbitration. JA1411. Defendants timely filed their Notice of Appeal on April 25, 2025. JA1412. This appeal is from an immediately appealable

---

[1] Defendants include the following former employees of Plaintiffs-Appellees: Aaron Chavez; Alex Guevara; Ana Flores; Anthony Cipriano; Antonio Rivera; Bruce Wilson; Carlos Romero; Chelsea Montes; Christian Isopescu; Dogan Gunessever; Edward Martin; Erodita Guevara; Eun Shin; Hector Orozco; Hugo Cajina; James Osborn; Jeffrey Shade; Kai Reed; Michael Kentes; Michael Hook; Patrick White; Paul Lyons; Robert Dorman; Roberto Huaccha; Roy Braxton; Roy Hippert, Jr.; Sean Mclain; Thomas Grant; Tommy Tran; William Smith; and William Bonilla.

1

order refusing arbitration, and it is properly before this Court.

## STATEMENT OF ISSUES

1.      Whether the district court erred by refusing to compel arbitration where (a) valid written arbitration agreements indisputably govern the parties' disputes, and (b) Geneva's refusal to pay AAA-required fees constitutes a "failure, neglect, or refusal" to arbitrate under the FAA?

2.      Whether the district court abused its discretion by maintaining a stay after Geneva defaulted in proceeding with arbitration through nonpayment, contrary to 9 U.S.C. § 3's condition that a stay is available only when the applicant "is not in default."

## STATEMENT OF THE CASE

This appeal presents the question of whether the District Court's refusal to enforce the parties' arbitration agreements in the face of Geneva's clear obstruction was in error.

Geneva, along with related entities and individuals, employed Defendants, who are thirty-one (31) former employees. Geneva own and operate numerous car dealerships and related businesses in Northern Virginia.

Each Defendant entered an arbitration agreement as a condition of employment, requiring that "any claim that arises out of, or relates to" Defendants' "employment or termination with" Geneva "must be resolved through final and

2

binding arbitration." JA289, JA298–357. The arbitration agreements designate the American Arbitration Association ("AAA") as the arbitral forum and incorporate the AAA's Employment Arbitration Rules. JA289, JA298–357. The arbitration clauses in the agreements are mutual and valid; they also obligate the employer to pay certain arbitration fees. JA1409. There is no dispute that these written agreements encompass Defendants' claims at issue; but even if there was, such a questions are expressly delegated to an arbitrator by virtue of a delegation clause in each agreement. JA289, JA298–357 (requiring arbitration of "any dispute concerning the arbitrability of any claim").

On February 16, 2024, Defendants filed 31 individual demands for arbitration as part of a putative "mass arbitration" with the AAA against Geneva, alleging various employment and/or termination-related claims (the "Mass Arbitration"). JA221–82. Under the arbitration agreements and applicable AAA rules, Geneva, as the employer and drafter of the arbitration clause, was required to pay nonrefundable filing and administrative fees for each case in order for the arbitrations to proceed. JA1409. Rather than honor its contractual obligation to arbitrate, Geneva sought to stop the arbitrations from proceeding.

On March 28, 2024, Geneva filed a Petition to Stay and Enjoin Arbitration in Virginia state court, seeking to halt the Mass Arbitration. JA22–110. Geneva's petition asserted that the multiple arbitration filings were improper and requested a

preliminary injunction under the FAA, 9 U.S.C. § 4; Va. Code § 8.01-628; and Va. Code § 8.01-581.02 to prevent Defendants from proceeding with their AAA arbitrations. On April 29, 2024, Defendants removed the action to the District Court pursuant to 28 U.S.C. §§ 1441, 1446, and Federal Rule of Civil Procedure 81. JA14–738. In the federal action, Geneva remained as the nominal plaintiffs seeking to enjoin Defendants' Mass Arbitration.

Once in federal court, both sides quickly moved for relief. On May 6, 2024, Defendants filed a Motion to Compel Arbitration and for Sanctions to compel Geneva to arbitrate the underlying disputes and arguing that Geneva's suit was an impermissible attempt to circumvent the arbitration agreements. JA739–742. Then, on May 8, 2024, Geneva moved to stay the arbitrations and sought a temporary injunction barring Defendants from pursuing their AAA cases. JA778–86.

The District Court held a hearing on both motions on June 6, 2024, and denied both motions from the bench. JA1383–86. Specifically, the court denied Geneva's request to enjoin the arbitrations and also denied Defendants' first motion to compel arbitration, stating "I've already said I'm going to dismiss the motion to stay arbitration and the motion for a preliminary injunction, so I can't see why I would compel it to go to arbitration something I have dismissed." JA1384. The Court then issued a written order on June 7, 2024, denying the motions and staying the case "pending resolution of the parties' claims in arbitration." JA1392. In effect, the

4

District Court declined to interfere with the arbitrations and expected the parties to proceed in AAA, expressly staying the litigation with that understanding. JA1392.

After the District Court's June 7, 2024, order, the onus was on Geneva to fulfill its contractual requirements to pay all required fees to proceed with arbitration. In accordance with the court's order, Defendants promptly provided the AAA with a copy of the order and sought to resume the arbitration process. JA1397–1408. The AAA then inquired whether it should reopen the previously filed cases and again request payment of Geneva's share of initiation fees (which had not been paid), given the court's directive that the disputes be arbitrated. JA1398. Defendants agreed that the AAA could allow Geneva additional time to cure its non-payment. JA1409. Geneva, however, unequivocally refused to pay the required AAA fees. JA1409. In an email to AAA dated June 14, 2024 (from Geneva's counsel), Geneva stated it "s[aw] no reason" to disturb the AAA's prior administrative closure of the cases or to remit the unpaid fees. JA1397–98.

The AAA responded on June 17, 2024, with a formal letter to both parties. JA1409.  In that letter, the AAA confirmed that it "would consider reopening" the 31 arbitrations pursuant to the court's order "upon receipt of [Geneva's] Initiation Fee." JA1409. However, the AAA noted its understanding, based on counsel's communications, that Geneva "will not be remitting the AAA Initiation Fees required to proceed with arbitration." JA1409. Accordingly, the AAA declared that

5

its "previous decision not to administer these 31 cases due to [Geneva's] non-payment of AAA fees remains in effect." JA1409. The AAA further stated that, because Geneva (the employer) had "failed to comply with the Employment Arbitration Rules and Mass Arbitration Supplementary Rules and corresponding . . . Fee Schedule," the AAA "may decline to administer any future employment matter involving [Geneva]." JA1409. The AAA even requested that Geneva "remove [AAA's] name from its arbitration agreements so there is no confusion to the public." JA1409. In sum, by mid-June 2024, the AAA arbitrations had remained administratively closed due to Geneva's deliberate non-compliance with the AAA rules and fee schedule. JA1409. Defendants, who had already paid their share of filing fees (which AAA noted were non-refundable), were left with no forum because Geneva refused to arbitrate in good faith. JA1409.

On March 3, 2025, Defendants filed their Renewed Motion to Compel Arbitration, along with a supporting memorandum and exhibits documenting Geneva's non-payment and AAA's administrative closure of the arbitrations. JA1393–1410. Defendants apprised the court of the post-stay developments: that Geneva had not proceeded with arbitration but instead had flouted the court's expectation by refusing to pay the required fees, effectively preventing the arbitrations from ever commencing. ECF No. 19 at 5–8. Defendants argued that, under the FAA, Geneva's actions constituted a "refusal of another to arbitrate under

a written agreement for arbitration," triggering the court's duty to compel arbitration. ECF No. 19 at 5–8. The motion asked the court to lift the stay and issue an order compelling Geneva to arbitrate Defendants' claims, including an order "directing [Geneva] to satisfy their outstanding Initiation Fees due to the AAA in the Mass Arbitration" so that the arbitrations could proceed. ECF No. 19 at 14.

Geneva opposed the motion. ECF No. 24. In its opposition, Geneva did not dispute that validity of the arbitration agreements covering Defendants' claims, nor did it invoke any generally applicable contract defense (such as fraud, duress, or unconscionability) to the arbitration agreements. *See generally* ECF No. 24. Instead, Geneva argued that Defendants' renewed motion was procedurally improper or unwarranted, and it sought to justify its refusal to arbitrate on several grounds. *See generally* ECF No. 24.

Geneva contended, first, that "there is no live dispute to be arbitrated" because the AAA had closed the cases and "declined to administer" the arbitrations— allegedly at Defendants' own request (Geneva pointed to the fact that Defendants had initially requested AAA to close the files after the non-payment, attempting to argue that Defendants had caused forum unavailability). ECF No. 24 at 1–4. Second, Geneva argued that Defendants "did not seek to reopen the arbitrations," asserting that the fault lay with the AAA's decision and that if Defendants still wanted arbitration, it was on them to either convince AAA to reopen, refile the cases, or find

7

a different arbitral forum. ECF No. 24 at 4–5. Geneva essentially maintained that the court should do nothing, because in their view, the AAA was no longer a viable forum and because another arbitration could theoretically be initiated. ECF No. 24 at 4–5. As discussed below, these arguments fundamentally misconstrued the facts and the law.

Defendants filed a reply refuting Geneva's arguments. ECF No. 25. The reply emphasized that all prerequisites for compelling arbitration under the FAA were satisfied: a dispute between the parties existed, a written arbitration agreement covered that dispute, the employment relationship involved interstate commerce, and the failure, neglect or refusal of one party to arbitrate the dispute. ECF No. 25 at 2–3 (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)).) Defendants refuted Geneva's characterizations and emphasized that Geneva had materially breached the arbitration agreements by failing to pay the fees, that Geneva had explicitly opposed resumption of the AAA arbitrations (as evidenced by counsel's June 14, 2024 email), and that without court intervention the stay would indefinitely deprive Defendants of any forum to adjudicate their claims. ECF No. 25 at 1–3. Defendants also noted that Geneva raised no valid contract defense to enforcement of the arbitration agreements. ECF No. 25 at 4. Defendants concluded that the FAA required the court to lift the stay and compel arbitration, ordering

Geneva to arbitrate and to pay the AAA fees it owed, after which the court should again stay the litigation pending completion of arbitration. ECF No. 25 at 3–4.

On March 27, 2025, the District Court issued a one-page Order denying Defendants' motion in full. JA1411. The Order provided virtually no substantive analysis. JA1411. What little analysis was provided stated "this case has already been referred to arbitration and the case stayed. The Defendants have provided no reason to lift that stay." JA1411. Based on that reasoning, the court denied Defendants' renewed motion. JA1411.

In effect, the District Court treated the matter as though nothing had changed since the initial stay: because the District Court had previously denied Geneva's bid to enjoin the arbitrations, the court believed the stay should simply remain in place with nothing left to do. *See* JA1411. The court did not address the undisputed fact that the arbitrations had not actually proceeded and could not proceed absent further court action. *See* JA1411. It did not mention the AAA's declination letter (JA1409) or Geneva's failure to pay the required fees, nor engage with Defendants' arguments under the FAA and related state arbitration law. *See* JA1411. The Order suggests the court viewed Defendants' request as unnecessary or unmeritorious because of its prior denial of Geneva's motion for a preliminary injunction, thus declining to intervene. *See* JA1411.

9

By effectively maintaining the status quo of a stayed litigation with no active arbitration forum, the District Court's ruling left Defendants in a procedural limbo: they remain barred from pursuing their claims in court (due to the stay), yet they have no ability to pursue arbitration either (because the AAA will not administer the cases and Geneva refuses to cooperate and pay the required fees).

Defendants timely appealed this Order on April 25, 2025. JA1412.

## SUMMARY OF ARGUMENT

The District Court's March 27, 2025 order should be reversed because it flouts the FAA and the parties' clear agreements to submit all employment disputes to arbitration with the AAA.

Under the FAA, a written arbitration agreement "shall be valid, irrevocable, and enforceable" and courts must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" when one party "fail[s] to comply" with that agreement. *See* 9 U.S.C. §§ 2, 4. Additionally, as the Supreme Court has emphasized, the FAA establishes a "liberal federal policy favoring arbitration" and requires courts to enforce arbitration agreements "according to their terms." *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). These dictates ensure a party cannot sabotage an arbitration and then claim there is no arbitration to compel. To hold otherwise would gut the FAA's core command that

10

arbitration agreements be enforced, by rewarding the very "failure, neglect, or refusal" to arbitrate that the statute forbids. *See* 9 U.S.C. § 4.

Here, it is undisputed that Defendants and Geneva agreed to arbitrate Defendants' disputes with the AAA; yet the District Court allowed Geneva to escape that obligation by refusing to pay their share of the arbitration fees. This was manifest error for three primary reasons.

First, the undisputed facts show that the only reason the arbitrations did not proceed was Geneva's own breach of the arbitration agreement: Geneva failed to pay the AAA fees, leading the AAA to administratively close the cases. JA1409. Geneva then expressly told the AAA they would not cure their non-payment. JA1397–98, JA1409. Under these circumstances, Geneva's insistence that they did not refuse to arbitrate is meritless. A party's deliberate non-payment of arbitration fees constitutes a refusal to arbitrate or default in arbitration. It is a fundamental breach of the agreement to arbitrate, which authorizes the court to take action to prevent the breaching party from benefiting from its obstruction. Here, Geneva's conduct is the very definition of "failure, neglect, or refusal" to arbitrate under FAA § 4.

Second, the district court's reasoning that no "reason" was provided to lift the stay reflects a misunderstanding of the situation and the law. Defendants in fact provided a compelling reason: absent court intervention, arbitration could not occur.

11

The FAA does not countenance an indefinite stay when the arbitral forum is unavailable due to one side's default. To the contrary, 9 U.S.C. § 3 permits a stay of litigation pending arbitration only so long as the applicant for the stay is "not in default in proceeding with such arbitration." Once a party defaults in the arbitration (as Geneva did by refusing to pay fees), the basis for a stay disappears. If an arbitration cannot proceed because one party breached, the stay should be lifted and the court should move forward. The district court's failure to recognize Geneva's default as a game-changer was legal error.

Finally, Geneva's specific arguments in opposition—that "there is no live dispute to be arbitrated" and that Defendants should have reinitiated arbitration or found a new forum themselves—are unfounded. ECF No. 24 at 1–4. The arbitration agreements between the parties unquestionably exist and bind them; the AAA's administrative closure did not erase the agreements. Geneva cited no authority for the notion that an arbitration agreement evaporates if the chosen administrator refuses to administer a case due to one party's non-compliance. In fact, case law overwhelmingly holds the opposite: the agreement remains valid, and courts must enforce it using the tools in the FAA or treat the breaching party's conduct as a waiver of the arbitration right. Nor would an alternative arbitral forum be appropriate; the contract specified that all disputes are to be arbitrated with the AAA using the AAA's employment arbitration rules, and AAA's rules prohibited it from

12

administering the Mass Arbitration given Geneva's non-payment. JA1409. Defendants took the proper step by seeking relief from the court. Geneva's position boils down to a cynical Catch-22: they refused to pay the AAA (ensuring the arbitrations would be administratively closed), then argued that because the AAA is supposedly unavailable, the court cannot compel arbitration either. The FAA forbids a party from paralyzing the dispute-resolution process in this way.

## STANDARD OF REVIEW

The Court reviews de novo a district court's denial of a motion to compel arbitration. *See Chorley Enters. v. Dickey's Barbecue Rests.*, Inc., 807 F.3d 553, 562–63 (4th Cir. 2015). The issues on appeal, including whether Geneva's conduct amounts to "default" or "refusal to arbitrate" under the FAA and what the FAA requires when the chosen forum is unavailable, are purely legal and thus reviewed de novo. Additionally, to the extent the District Court's order effectively maintained an indefinite stay of proceedings, this Court reviews the propriety of such a stay for abuse of discretion. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 27–28 (1983).

## ARGUMENT

**I.    THE DISTRICT COURT ERRED IN DECLINING TO LIFT THE STAY AND ENFORCE THE ARBITRATION AGREEMENTS AFTER GENEVA PREVENTED ARBITRATION FROM PROCEEDING.**

The FAA compelled the District Court to take action once it became clear that the Mass Arbitration had stalled due to Geneva's non-compliance. By doing nothing,

neither compelling arbitration in a viable way nor allowing litigation to proceed, the District Court violated the FAA's letter and purpose.

### A. Geneva Materially Breached the Arbitration Agreement by Refusing to Pay the AAA Fees, Which is a "Refusal to Arbitrate" Under the FAA.

It is undisputed that the AAA administratively closed the arbitrations because Geneva failed to pay the required fees. The AAA's June 17, 2024 declination letter makes this plain: "the AAA's previous decision not to administer these 31 cases due to Respondents' non-payment of AAA Fees remains in effect." JA1409. The letter also confirms that the AAA would consider reopening the cases if Geneva is willing to pay, but refused to do so at that time because Geneva refused to pay "the AAA Initiation Fees required to proceed." JA1409. In short, Geneva deliberately chose not to perform their obligation to arbitrate because paying the fees was a necessary prerequisite to arbitration under the parties' agreement, including its incorporation of the AAA rules.

Courts have consistently held that such conduct constitutes a repudiation or waiver of the right to arbitrate. The FAA does not allow a party to sabotage the arbitral process and then claim the benefits of the stay or of the arbitration clause.

*Sink v. Aden Enterprises, Inc.*, a Ninth Circuit case, provides a helpful example. 352 F.3d 1197 (9th Cir. 2003). There, an employer failed to pay its share of arbitration fees, leading the arbitrator to grant the employee's motion for an order of default. *See id.* at 1199. The Ninth Circuit affirmed the denial of a motion to

14

compel a second arbitration, holding that the employer was in "default in proceeding with such arbitration" under FAA § 3, and that its material breach of the arbitration agreement precluded it from compelling arbitration thereafter. *Id.* at 1199–1200. The court reasoned that allowing a breaching party "a second bite at the apple" would undermine the integrity of the arbitration process. *Id.* at 1201.

Similarly, in *Pre-Paid Legal Services, Inc. v. Cahill*, a Tenth Circuit case, one party's failure to pay AAA fees caused the AAA to close the case. 786 F.3d 1287 (10th Cir. 2015). The AAA determined in that case that "the arbitration had gone as far as it could due to [the party's] refusal to pay the fees." *Id.* at 1294. The Tenth Circuit found no error with the district court's decision to lift the stay and proceed with litigation because the arbitration had been "had in accordance with the terms of the agreement" and the offending party was "in default in proceeding with such arbitration." *See id.* at 1299. The court further agreed that the non-paying party breached the arbitration agreement by failing to pay the required fees in accordance with AAA rules and was not entitled to maintain the stay of the litigation. *See id.* at 1294 ("Our holding is consistent with decisions of other courts that have determined a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement.").

Geneva's non-payment of the required AAA fees thus put them in default in proceeding with arbitration within the meaning of FAA § 3. Section 3 implicitly

15

allows a court to lift a stay of litigation pending arbitration if a party is in default of the arbitration. 9 U.S.C. § 3 (stay is contingent on the applicant "not being in default in proceeding with such arbitration"). Courts interpreting this provision have found non-payment of fees to be precisely the kind of "default" Congress had in mind.

Indeed, *Garcia v. Mason Contract Prods., LLC* is on point. 2010 U.S. Dist. LEXIS 92869 (S.D. Fla. Aug. 18, 2010). There, an employer refused to pay the arbitrator's fees, causing the AAA to refuse to proceed with the arbitration, and the employee moved reopen the case in the district court. *See id.* at *1–*5. The court lifted the stay, holding that "Defendant's failure to comply with the contractual rules agreed to by the parties clearly constitutes a 'default' as that term is used in § 3 of the FAA." *Id.* at *4. The court emphasized that the plaintiff had agreed only to AAA arbitration, not to some informal alternative, and he should not be forced to pursue a different arbitral path because the defendant breached: "Plaintiff did not agree or assent to a AAA-like procedure; he agreed to a AAA-enforced procedure." *See id.* at *10.

Applying these principles here, Geneva's failure to pay was a material breach of the arbitration agreement and put them in default of arbitration. Therefore, Defendants had every right to ask the court to remove the stay and seek an order compelling arbitration with the AAA. Given the District Court's denial of their first motion to compel arbitration, Defendants chose, in the first instance, to ask the court

16

to compel arbitration because they still prefer to have their claims resolved in arbitration, if possible, consistent with their agreements.

But even had Defendants sought to proceed in court outright, the law would support them. Either way, Geneva's argument that they "there is no live dispute to be arbitrated" is false. ECF No. 24 at 1. The record evidence squarely contradicts Geneva's self-serving claim. JA1409. Geneva's counsel's own communication to the AAA on June 14, 2024 confirms their continued obstruction of the AAA proceedings. JA1397–98. And the AAA's declination letter memorializes that Geneva "will not be remitting the AAA Initiation Fees required to proceed with arbitration" and thus the cases remain closed. JA1409.

In light of this, the District Court (and Geneva) had no basis to say Geneva never refused arbitration. By failing to comply with the AAA's rules and pay the fees, and explicitly choosing not to cure that failure, Geneva manifestly refused to arbitrate the existing disputes.

**B. The District Court's Indefinite Stay Despite Geneva's Default Contravenes FAA §§ 3 and 4 and Deprives Defendants of Any Forum for Relief.**

Once Geneva defaulted in arbitration, the FAA required the court to modify or lift the stay, not rigidly continue it. The court's statement that the case "has already been referred to arbitration and . . . stayed" and that no further reason had been shown to lift the stay reflects an oversight of the critical change in circumstances: the denial

17

of Geneva's motion to enjoin the Mass Arbitration had effectively failed. JA1411. Under FAA § 3, a stay pending arbitration is conditioned on the moving party's fulfillment of its arbitration obligations. If the arbitration cannot proceed because that party defaulted, Section 3 no longer bars litigation. *See Pre-Paid Legal*, 786 F.3d at 1294 ("Mr. Cahill breached the arbitration agreement by failing to pay his fees in accordance with AAA rules and was not entitled to maintain the stay under § 3.").

In effect, by March 2025, the initial stay had outlived its purpose. The stay's purpose was to allow arbitration to go forward; but arbitration did not go forward. Continuing to stay the case served only to indefinitely delay any resolution and, perversely, to shield Geneva from facing either an arbitrator or a judge.

Moreover, FAA § 4 empowers a party aggrieved by another's "failure, neglect, or refusal" to arbitrate under a written agreement to petition the court for an order compelling arbitration. That is exactly what Defendants did in their renewed motion: they were aggrieved by Geneva's refusal to proceed with arbitration, so they sought an order compelling arbitration. Section 4 says that when such a petition is made, "the court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, *the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement*." 9 U.S.C. § 4 (emphasis added). The

18

only caveat is if the opposing party denies the existence of an agreement to arbitrate, then a jury trial on that issue may be needed.

Here, Geneva never disputed the existence of an arbitration agreement; they contended it should not be enforced because the AAA refused to administer the cases due to Geneva's continued noncompliance and because of supposed procedural issues. Thus, Section 4's command to "direct the parties to proceed to arbitration in accordance with the terms of the agreement" squarely applies. The District Court did not do that—it did not direct the parties to do anything further, instead just maintaining a stay. JA1411. That was error. The court should have either ordered the parties to proceed with arbitration despite the AAA's administrative closure, or, if for some reason arbitration was deemed impossible due to the breach, the court should have lifted the stay and allowed the case to proceed in court (so that Geneva could no longer use the stay as a sword and shield). Doing nothing is not an option the FAA contemplates once a failure to comply with an arbitration agreement is shown.

What happened here subverts both arbitration and litigation. No court, to Defendants' knowledge, has responded to a party's arbitration obstruction by simply freezing the case in perpetuity as the court did here. This outcome prejudices not only Defendants but also thwarts the public interest in the prompt and fair resolution

19

of disputes. One party's obstructionism should not strand the other's claims with no end in sight.

At a minimum, once Defendants demonstrated that arbitration had been stymied by Geneva, the district court needed to inquire into the facts and exercise its discretion in accordance with the FAA. Instead, the court apparently believed that its June 2024 denial of Geneva's motion for a preliminary injunction divested it of authority or responsibility to act further. That is incorrect. A district court always retains jurisdiction to ensure its orders are effectuated and to adjust a stay as equity requires. Here, equity and law required lifting or modifying the stay. The March 27 Order's cursory rationale—that the case was "already" referred to arbitration (but not compelled)—ignores the reason staring the Court plainly from the record: the arbitration was a dead letter absent court intervention.

Defendants plainly argued that reason in their briefs below (and supported it with exhibits); the District Court's failure to acknowledge it was legal error.

### C. Geneva's Arguments Against Compelling Arbitration are Legally and Factually Baseless.

Geneva raised two primary arguments in the court below to justify why, in their view, the court could not or should not compel arbitration at this juncture. Neither has merit.

First, Geneva argued that because the AAA administratively closed the Mass Arbitration, "there is no live dispute to be arbitrated." ECF No. 24 at 1. This is a red

20

herring. Defendants' motion to compel did not depend on the existence of an ongoing arbitration proceeding; it asked the court to order the initiation (or re-initiation) of arbitration in accordance with the agreement.

Under FAA § 4, a court can "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," even if an arbitration was never commenced or was commenced and terminated. In *Columbia State Bank v. O'Meara*, the court rejected an argument that it could not compel arbitration because the claimant had not first formally demanded arbitration from the AAA. 2012 U.S. Dist. LEXIS 113671, at *12–13 (D. Or. June 11, 2012). The party resisting arbitration contended no arbitration was "invoked" because the borrower did not submit a written request to initiate the arbitration. *See id.* The court disagreed, holding that a motion to compel in court itself is sufficient to "trigger enforcement of an arbitration agreement," and that insisting on a particular formality (like a prior demand) "overemphasizes form over substance." *See id.* at *13–14.

Likewise, here, the absence of an ongoing arbitration proceeding is immaterial; the question is whether there is a valid agreement to arbitrate and a dispute within its scope (there is), and whether the opposing party is failing to comply (yes, by refusing to pay the requisite AAA fees). Those conditions are satisfied, so the court must compel arbitration. The fact that the AAA declined to administer the first attempt at the Mass Arbitration because of Geneva's

21

noncompliance does not eliminate the agreements to arbitrate—those agreements remain binding unless it is found unenforceable on recognized grounds (and Geneva have never argued the arbitration clause is invalid). Indeed, the AAA's own declination letter explicitly contemplated the possibility of the parties arbitrating with the AAA later, assuming Geneva finally complied with its obligations under the contracts. *See* JA1409 ("[T]he AAA would consider reopening the caseload and proceeding with administration of these 31 cases upon receipt of [Geneva's] Initiation Fee."). Defendants, as the moving parties, were willing to proceed to arbitration. There is no reason to deny compelling arbitration.

Second, Geneva argued that Defendants never "formally demanded" that the AAA reopen the Mass Arbitration after June 2024 or that Defendants failed to initiate a brand-new arbitration with another, non-AAA arbitral forum, and that these omissions justify the court's denial. ECF No. 24 at 4–5. This argument misstates both the facts and the law.

Factually, Defendants did effectively ask the AAA to proceed. Their counsel provided the court's order to the AAA and did not object to giving Geneva more time to pay the requisite fees. JA1409. It was Geneva who, in response, told the AAA they would not pay and saw no reason to reopen. AAA then made its final decision accordingly. JA1409. Thereafter, any further demand by Defendants to AAA would have been futile, as AAA had explicitly closed the file and barred future

administration absent payment. The law does not require idle gestures. The condition precedent to arbitration here, pursuant to the AAA rules, was payment of fees, and Geneva flatly refused. Thus, the onus appropriately shifted to the court to enforce the agreement via compelling Geneva to arbitrate.

Moreover, Defendants had already initiated the arbitrations once—at significant cost—only to have them aborted by Geneva. The suggestion that Defendants should have to start all over (incurring new filing fees, etc.) in a different forum without any assurance that Geneva would not similarly obstruct that forum, is unreasonable. It would also undermine the incentive structure of the FAA. If courts expect the non-breaching side to chase the breaching side from forum to forum, it enables delay and multiplies costs. It is far better (and consistent with the FAA) for the court to step in and impose an enforceable order. For instance, if the court had ordered a new arbitration, Geneva would face contempt or other consequences for defying that order, which is a powerful deterrent to continued noncompliance.

Legally, Geneva's argument runs afoul of a critical sentence in the Section 4 of the FAA, which says that if the court orders arbitration, the arbitration shall proceed "in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Here, the "manner provided" in the agreement was AAA administration and rules. That turned out to be unworkable only because of Geneva's breach. Section 4 does not say a party must on its own secure a new forum. Geneva cites no case where a

23

court denied a motion to compel arbitration on the grounds that the moving party should have privately arranged a different arbitrator first. On the contrary, once a party stonewalls arbitration, a judicial order is often the only way to move forward.

Geneva's reliance on the notion that the AAA's administrative closure was at "Defendants' request" (because Defendants initially asked the AAA to enforce the rules when it was clear Geneva had no intention to pay) is a red herring. Defendants' "request" to close was a procedural step taken after Geneva's breach to preserve their rights.

Defendants' sensible action to administratively close a futile proceeding and seek relief with the Court does not equate to abandoning their claims or their arbitration agreement. Defendants clearly signaled to the AAA after the court's stay order that they were ready to arbitrate if Geneva paid. The AAA's declination letter confirms that "[Defendants] do not object to the AAA allowing additional time for [Geneva] to cure their non-payment," but "[Geneva] will not be remitting the AAA Initiation Fees required to proceed with arbitration." JA1409. Thus, the cause of the arbitrations' non-occurrence is entirely Geneva's refusal to perform, not any reluctance by Defendants. Geneva cannot use Defendants' procedural acquiescence in AAA's administrative closure (in response to Geneva's own breach) as a sword to cut down the arbitration agreement permanently. The equitable maxim that one cannot take advantage of one's own wrongdoing squarely applies.

24

In sum, Geneva's opposition boiled down to a cynical strategy: they breached the arbitration agreement, waited for the AAA to wash its hands of the cases, and then argued that this very situation (of their making) insulates them from being compelled to arbitrate or otherwise answer for Defendants' claims. Neither the FAA nor basic fairness tolerates that outcome.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court reverse the district court's March 27, 2025, Order denying Defendants' Motion to Lift Stay and Renewed Motion to Compel Arbitration. Defendants ask this Court to remand with instructions to promptly enforce the arbitration agreement. Specifically, Defendants request that the Court direct the district court to issue an order compelling the parties to arbitrate Defendants' employment-related claims with the AAA without further delay. The order compelling arbitration should make clear that Geneva are obligated to cooperate and pay the fees necessary to initiate and sustain the arbitrations, in accordance with their agreement. Defendants further request any other relief the Court deems appropriate, including an award of costs and attorneys' fees on appeal.

**<u>STATEMENT REGARDING ORAL ARGUMENT</u>**

Counsel for Defendants respectfully requests oral argument on this matter. Oral argument would help establish and clarify the rule of law, providing guidance

25

on the application of the FAA in situations, like here, where one party deliberately obstructs and frustrates the contractually agreed-to arbitration process.

Respectfully submitted this September 10, 2025,

*/s/ Robert W.T. Tucci*
Robert W.T. Tucci
Thomas J. Eiler
ZIPIN, AMSTER, & GREENBERG LLC
8757 Georgia Ave., Suite 400
Silver Spring, MD 20910
301-587-9373
rtucci@zagfirm.com
teiler@zagfirm.com

*Counsel for Defendants-Appellants*

26

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

2. Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, this Opening Brief of Appellants contains <u>6,049</u> words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.

Respectfully submitted this September 10, 2025,

*/s/ Robert W.T. Tucci*
Robert W.T. Tucci
Thomas J. Eiler
ZIPIN, AMSTER, & GREENBERG LLC
8757 Georgia Ave., Suite 400
Silver Spring, MD 20910
301-587-9373
rtucci@zagfirm.com
teiler@zagfirm.com

*Counsel for Defendants-Appellants*
